FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 08, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL C.[1],<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. 4:21-CV-05080-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Cross-Motions for Summary Judgment. ECF Nos. 18, 19. The motions were heard without oral argument. Plaintiff is represented by Chad L. Hatfield; Defendant is represented by Joseph Langkamer and Timothy M. Durkin.

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying her application for disability benefits under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382. After reviewing the administrative record

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~1

and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 13, and denies Defendant's Motion for Summary Judgment, ECF No. 17.

## I.     Jurisdiction

On March 1, 2018, Plaintiff filed applications for disability benefits under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. She alleged disability beginning August 15, 2016. Plaintiff's applications were denied initially and on reconsideration. On June 11, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On October 8, 2020, Plaintiff appeared and testified by telephone before ALJ Maria Palachuk, with the assistance of her counsel, Chad Hatfield. Medical expert Dr. Arnold Ostrow and Vocational Expert Jaye Stutz also participated by telephone. The ALJ issued a decision on November 18, 2020, finding Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on March 18, 2021. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on May 21, 2021. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~2

under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

Before considering to the fourth step, the ALJ must first determine the claimant's residual functional capacity. An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III.    Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

For claims filed on or after March 27, 2017,[2] like the present claim, new regulations apply regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); *see Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c. Specifically, the rules eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. 82 Fed. Reg. at 5853. In articulating the ALJ's consideration of medical opinions for persuasiveness, the ALJ considers the following factors: (1) Supportability and (2) Consistency; (3)

---

[2] For claims filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff." *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~5**

Relationship with the claimant, including (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extend of the treatment relationship; (v) examination relationship; (4) Specialization; and (5) Other factors, including whether the medical source has familiarity with the other evidence or an understanding of SSA's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

> Supportability and consistency are further explained in the regulations:
>
> (1) *Supportability.*
> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.*
> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c); 416.920c(c).

When a medical source provides multiple medical opinions, the ALJ must articulate how it considered these opinions in a single analysis applying the above-listed factors. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). If equally persuasive medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must articulate how it considered the other most persuasive factors in making its decision. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

## IV. Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~6**

herein.

In 2016, Plaintiff was diagnosed with a vernal hernia. The hernia was estimated to be 6 cm in size. At the time of the diagnosis, Plaintiff was living in Texas. It was recommended by her local doctors that any surgery to have it removed would need to take place in either Dallas or at Baylor. Plaintiff was unable to have the surgery due to being unable to financially afford the surgery.

Since that time, Plaintiff moved to the Tri-Cities area in Washington State. The ventral hernia is still present. Imaging in October 2018 indicate that Plaintiff has a "very large ventral hernia within the subcutaneous tissues" that "contains transverse colon, small bowel and omental fat." AR 449. The hernia sac is 20 cm x 11 cm x 11 cm in size. The hernia measured 6.5 cm from side to side and 6 cm from top to bottom. In 2020, it appeared that most of her anterior abdominal wall was herniated. It is estimated that the hernia is approximately the size of a volleyball. AR 490.

At the hearing, Plaintiff testified that she experiences nausea and vomiting for up to a couple of hours a couple of times per week, and that this usually occurs at night such that she feels sick and weak on the following day. She also testified that she has issues with diarrhea and that she must lie in bed a lot due to not feeling well. She also testified to difficulties standing and walking due to her legs getting numb, starting to feel weak, and hurting and cramping such that she cannot be on her feet for more than 10 to 15 minutes at a time.

She testified that she goes grocery shopping with her mother but must use an electric cart. She also testified that she no longer attends church due to her difficulties with standing and sitting for very long. She also stated that she gets out of breath easily due to her hernia.

## V. The ALJ's Findings

The ALJ issued an opinion affirming denial of benefits. AR 15-27. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~7**

since August 15, 2016. AR 17.

At step two, the ALJ identified the following severe impairments: ventral hernia and subpramorbid obesity with a body mass index (BMI) ranging from 50-59. AR 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 20. Ultimately, the ALJ concluded that Plaintiff has a residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: she can occasionally engage in all postural activities but never climb ladders, ropes, or scaffolds and she can have no exposure to hazards.

AR 20.

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a cafeteria attendant. AR 22.

In the alternative, at step five, the ALJ found that Plaintiff was not disabled and capable of performing work that exists in significant numbers in the national economy, such as a laboratory sample carrier, marker, and assembler, electrical accessories. AR 26.

**VI. Issues for Review**

1. Whether the ALJ properly evaluated the medical opinion evidence?
2. Whether the ALJ properly evaluated Plaintiff's symptom testimony?
3. Whether the ALJ conducted an adequate analysis at Steps Four and Five?

**V. Analysis**

**1. Evaluation of Medical Opinion Evidence**

**A. Dr. Meneleo Lilagan**

Dr. Meneleo Lilagan examined Plaintiff in September 2018 and he completed a Physical Function Evaluation. AR439-444. He determined that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~8**

Plaintiff suffered from an upper abdominal wall mass that is big and painful, resulting in exacerbation of pain when just doing ordinary activities; (2) Plaintiff has been unable to schedule surgery for her large abdominal hernia due to financial constraints; (3) Plaintiff's abdominal wall mass and ventral hernia causes abdominal pain resulting in marked limitations in sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching; (4) Plaintiff is severely limited and unable to meet the demands of sedentary work; and (5) her abdominal wall mass has grown significantly over time and requires surgical intervention. Dr. Lilagan concluded that Plaintiff is eligible for work restrictions until her symptoms are properly addressed and managed.

The ALJ found Dr. Lilagan's opinion unpersuasive because Dr. Lilagan listed no examination findings in support of his opinion on the form that he completed. Dr. Lilagan's treatment notes show an unremarkable physical examination with the exception of tenderness to palpation of a large abdominal protrusion. The ALJ believed that the hernia, alone, did not support the significant degree of limitation identified by Dr. Lilagan.

The ALJ's finding that Dr. Lilagan's opinion was unpersuasive is not supported nor consistent with the record. Rather, the objective evidence, medical records, and progression of Plaintiff's impairments, symptoms and functional limitations are full supportive and consistent with Dr. Lilagen's opinion.

### B. Dr. Dee Roach

Dr. Roach examined Plaintiff in 2017. Dr. Roach concluded that Plaintiff had "a huge ventral hernia involving her entire anterior abdominal wall with abdominal contents extruding through the recute muscles." In October 2017, Dr. Roach indicated the "massive ventral hernia" clearly limits Plaintiff from doing any kind of lifting, pushing, bending, stooping, or other physical activity. Dr. Roach also wrote a letter stating "it is apparent that because of her large ventral hernia, [Plaintiff] is unable to seek gainful employment at this time."

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~9**

The ALJ concluded that Dr. Roach's opinions were inconsistent with the largely unremarkable objective findings and were overbroad, given that Plaintiff was able to participate in a bake sale. The ALJ seemingly forgets that Plaintiff has a very large ventral hernia, which is the reason Dr. Roach restricted Plaintiff's activities, choosing to instead focus on the remaining "unremarkable" objective findings regarding Plaintiff's physical health. Dr. Roach's opinion is both consistent and supported by the longitudinal record.[3] Conversely, the ALJ's conclusions regarding Dr. Roach's opinion is not supported by substantial evidence in the record.

### C. Kacie Hamreaus, PA

In March 2020 physician assistant Kacie Hamreaus agreed with Dr. Lilagan's opinion that Plaintiff was unable to meet the demands of sedentary work due to her hernia and associated obesity.

The ALJ found Ms. Hamreaus's opinion to be unpersuasive for the same reasons to reject Dr. Lilagan's opinion. Given the ALJ erred in finding Dr. Lilagan's opinion unpersuasive, the ALJ's findings regarding Ms. Hamreaus's opinions are not supported by substantial evidence.

### D. Dr. Ostrow

Dr. Ostrow concluded that Plaintiff had the residual functional capacity for light work with some limitations. Notably, Dr. Ostrow did not take into account Plaintiff's "subjective complaints" of fatigue, nausea, vomiting and cramping approximately two days a week because he never examined Plaintiff, although he

---

[3] Plaintiff was seen in April 2020 by Dr. Bonner. At that time, he concluded that Plaintiff is capable of doing work that requires minimal physical activity and lifting or other activities that increase intra-abdominal pressure should be avoided at that time. AR 514.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~10**

did acknowledge it was possible for people with a ventral hernia the size of Plaintiff's to have nausea and vomiting. AR 44.

The ALJ found Dr. Ostrow's opinions to be very persuasive because it was based on his review of the large majority of the medical evidence of the record and because it is consistent with the record as a whole.

The ALJ's finding regarding Dr. Ostrow's opinion is not supported by substantial evidence, especially in light of the conclusions of examining and treating doctors that significantly restricted Plaintiff's activities. On the contrary, Dr. Ostrow's opinion is neither consistent nor supported by the longitudinal record and is incomplete, since Dr. Ostrow did not account for the possibility that Plaintiff was experiencing fatigue, nausea, vomiting and cramping. The ALJ erred in finding Dr. Ostrow's opinion very persuasive.

### 2. Evaluation of Plaintiff's Symptom Testimony

Plaintiff argues the ALJ erred in evaluating her symptom testimony. It appears the ALJ discredited Plaintiff's symptom testimony because although she had reported that she was unable to pay for a hernia surgery, there is evidence in the record that she had spent time scheduling bake sales and other creative revenue-generating activities to help defray some of the cost. AR22. Another reason the ALJ rejected Plaintiff's symptom testimony was because she was unable to lose weight and did not complete physical theraphy. AR 21-22.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin* 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (citation and quotation omitted). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~11

specific, clear and convincing reasons for doing so." *Id*. (citation and quotation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. (citation and quotation omitted). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304. Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict her other testimony, or (2) Plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Although not clear, it appears the ALJ believes that Plaintiff is not being truthful about not being able to afford the surgery because apparently she could

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~12

pay for the surgery from the money she raised from the bake sales. AR 22. Regarding the bake sales, the ALJ also seemingly believed that Plaintiff would be doing all the baking for the "bake sales," which evidences the ability to do full time work. *See* AR 22 ("For instance, having a bake sale requires making/cooking the product, thus standing/walking in the kitchen, reaching for ingredients, bending/stooping in and out of the oven, carrying the product to the sale location, etc. Further, the ingredients must be purchased at a grocery store in order to have the supplies to make the product."). It is this Court's experience that fund-raising bake sales usually imply that others donate goods to sell in order to raise money for a specific cause, not that the person who needs the funds does all the baking and selling. The ALJ's reliance of the fact that Plaintiff may have attempted to organize a bake sale to conclude that she is not credible is not a legally sufficient reason for discounting her symptom allegations.

      Another reason the ALJ discounted Plaintiff's symptom testimony was because she was unable to lose weight. Although failure to follow prescribed treatment is generally a proper basis for an adverse credibility determination, the Ninth Circuit has held that an obese claimant's failure to follow her doctor's recommendation to lose weight, as opposed to her failure to follow "prescribed treatment," may not be used to support an adverse credibility determination. *See Orn*, 495 F.3d at 638 ("[T]he failure to follow treatment for obesity tells us little or nothing about a claimant's credibility."). The ALJ also rejected Plaintiff's symptom testimony because she failed to engage in the exercise as recommended, even though the record suggests the hernia may have impeded her ability to effectively exercise. Notably, in September 2020, Plaintiff underwent a stress test that indicated that she showed poor exercise tolerance with a hypertensive response to exercise.

      An ALJ may not discount symptom testimony for failing to comply with treatment "without considering possible reasons [the claimant] may not comply

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~13

with treatment." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). Furthermore, the ALJ must explain in her written decision how she considered the claimant's reasons for noncompliance. *Id.* at *10. Here, the ALJ did not satisfy its obligation.

The ALJ identified Plaintiff's reasons for noncompliance but did not explain whether and why these were good reasons for not completing physical therapy or for not losing weight. The ALJ never inquired into the reasons for this failure. As a result, Plaintiff's noncompliance is not a clear and convincing reason for discounting her testimony. *See* SSR 16-3p, 2017 WL 5180304, at *9 ("We may need to ... ask why [the claimant] has not complied with or sought treatment in a manner consistent with his or her complaints.").

Notably, the ALJ found Dr. Flanagan's opinion to be very persuasive. Dr. Flanagan found that Plaintiff was unable to focus her attention on work activities at an appropriate and consistent pain, not due to depression, but due to pain and constant nausea, vomiting, and digestive problems. Similarly, Plaintiff's difficulty with maintaining employment was exclusively related to her hernia, not due to her depression. Yet, at the same time, the ALJ concluded that Plaintiff was not being truthful about her pain, nausea, vomiting and digestive problems. It appears then, that the ALJ was willing to accept Plaintiff's description of symptoms when it allowed it to minimize Plaintiff's depression but was unwilling to accept Plaintiff's description of her symptoms in order to minimize the physical limitations caused by the hernia.

Consequently, the ALJ's reasons for discounting Plaintiff's symptom testimony are not clear and convincing and as such, they are not legally sufficient.

### VI. Conclusion

The ALJ's decision finding that Plaintiff is not disabled is not supported by sufficient evidence. Here, the record is fully developed and the ALJ failed to provide legally sufficient reasons for finding unpersuasive the opinions of the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~14

treating doctors who found that Plaintiff was able to do less than sedentary work due to her very large hernia. On the contrary, it is clear those opinions are supported and consistent with the longitudinal record. If those opinions were credited as true, the ALJ would be required to find Plaintiff disabled on remand. As such, remand for the calculation and award of benefits is appropriate and proper.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 19, is **DENIED**.

3. The decision of the Commissioner is **reversed** and **remanded** for an immediate calculation and award of benefits.

4. Judgment shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 8th day of June 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~15